UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, <br><br> Plaintiff, <br><br> v. <br><br> REYNA RAMIREZ, individually and d/b/a REDWOOD INN, <br><br> Defendant. | No. 1:14-cv-01340 AWI-GSA <br><br> **FINDINGS AND RECOMMENDATIONS RE. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** <br><br> (Doc. 18) |

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") filed a complaint against Defendant Reyna Ramirez ("Defendant"), individually and doing business as Redwood Inn, alleging, *inter alia*, violations of federal telecommunications statutes. (Doc. 1). Pending before the Court is Plaintiff's motion for default judgment. (Doc. 18).

Defendant Reyna Ramirez has not appeared in the action, nor has she filed an opposition. The Court took the matter under submission, without oral argument, pursuant to Local Rule 230(g). Upon a review of the pleadings, Plaintiff's motion is GRANTED IN PART.

**BACKGROUND**

The complaint alleges violations of the Federal Communications Act of 1934, as

1

amended, specifically 47 U.S.C. §§ 553 and 605, *et seq*. It also alleges a state law claim of conversion, as well as a violation of California Business and Professions Code § 17200, *et seq.* (Doc. 1). Plaintiff's claims are premised on the allegation that it held the exclusive nationwide commercial distribution (closed-circuit) rights to *"The One" Floyd Mayweather, Jr., v. Saul Alvarez WBC Light Middleweight Championship Fight Program* ("the Program"). Plaintiff alleges that on Saturday, September 14, 2013, the Defendant illegally intercepted and broadcast Plaintiff's Program at her business establishment, the Redwood Inn, in Sultana, California. (Doc. 1, ¶¶ 9, 14, 17).

Plaintiff was served with the summons and complaint via personal service on January 8, 2015, pursuant to Federal Rule of Civil Procedure 4(e)(1). (Doc. 9). Under Rule 4(e)(1), an individual may be served under state law, here California law. California law authorizes personal service. *See,* Cal. Civ. Proc. Code § 415.10.

Defendant has not answered the complaint or otherwise appeared in this action. (Doc. 14-1). Accordingly, on February 3, 2015, the Clerk of Court entered default against Defendant. (Doc. 15). In the instant Motion for Default Judgment, Plaintiff requests that the Court enter judgment in its favor. Plaintiff seeks relief on two of the four claims for relief asserted in the complaint, specifically claim one (Communications Act, 47 U.S.C. § 605, *et seq*.), and claim three (conversion). (Doc. 18-1, pg. 17). Plaintiff requests $110,000.00 pursuant to its Communications Act claim, (47 U.S.C. §§ 605(e)(3)(C)(i)(II) and (c)(ii)) and $2,200.00 for the conversion claim.[1] (Doc. 18-1, pgs. 9 & 17 and Doc. 18-5). Thus, the total damages sought by Plaintiff amount to $112,200.00. (Doc. 18-5, pg. 2).

Although Defendant was served with Plaintiff's Motion for Default Judgment by United

---

[1] In the motion, Plaintiff initially requested a total of $52,200.00 in damages. (Doc. 18-2, pg. 2). However, in a supplemental declaration attached to the motion, Plaintiff's counsel requests a total of $112,200.00. (Doc. 18-5, pg. 2). Although not articulated in the argument section of the brief, the Court presumes that Plaintiff is requesting the higher amount.

2

States Mail, she has not filed an opposition or other response.  (Doc. 18-2).  There is no evidence that Defendant is an infant or incompetent person, is in the military, or otherwise exempted from default judgment under the Servicemembers Civil Relief Act of 2003.  (Doc. 18-2).

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default judgment upon application of the plaintiff.  Courts generally consider the *Eitel* factors in determining whether to grant a request for default judgment.  *See Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).  The *Eitel* factors are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

When a defendant has failed to respond to the complaint, courts presume that all well-pleaded factual allegations relating to liability in the complaint are true.  *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Dundee Cement Co. v. Highway Pipe and Concrete Products*, 722 F.2d 1319, 1323 (7th Cir.  1983) ("Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true."); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).  Therefore, when determining liability, a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact.  *See Panning v. Lavine*, 572 F.2d 1386 (9th Cir. 1978).  While factual allegations concerning liability are deemed admitted upon a defendant's default, factual allegations concerning the amount of damages are not presumed to be true.  *See Geddes*, 559 F.2d at 560; *TeleVideo Sys., Inc.*, 826 F.2d at 917-18.  The Court must ensure that any damages awarded are reasonable and supported by the evidence in the record.  Fed. R. Civ. P. 55(b)(2)(C); *Geddes*, 559 F.2d at 560;

*TeleVideo Sys., Inc.*, 826 F.2d at 917-18.

## DISCUSSION

**A. Default Judgment is Warranted under the *Eitel* Factors**

Entry of default judgment is committed to the Court's discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). Applying the *Eitel* factors delineated above, the Court recommends that default judgment should be granted here. Plaintiff's complaint reflects a meritorious substantive claim; it properly alleges material facts and elements necessary to the claims asserted and to the general relief sought. Defendant has not appeared in this action or contested this motion, and there is no evidence that her default is the result of excusable neglect. Inasmuch as Defendant's default serves as an admission to Plaintiff's well-pled allegations of fact, *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978), the Court concludes that there is no dispute as to any material fact. There is no basis to conclude that Plaintiff will be prejudiced by the case proceeding via default judgment rather than trial. Indeed, Plaintiff would suffer prejudice if the Court does not enter default judgment as Plaintiff would have no other means of recovery. *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D.Cal.2003); *Joe Hand Promotions, Inc. v. Hauser*, 2014 WL 172532, at *3 (E.D. Cal. Jan. 15, 2014) (No. 1:13-cv-01072 LJO-SKO); *Joe Hand Promotions, Inc. v. Joseph Anthony Gonzalez*, 2015 WL 507397 at * 2 (E.D. Cal. Feb. 5, 2015) (No. 1:14-cv-1485 AWI-GSA). Thus, the only factor weighing against default judgment in this case is the relatively large amount of money Plaintiff seeks in damages. However, as discussed below, the actual award made by the Court is not so large as to militate against proceeding by default judgment. Therefore, although the Court favors resolving cases on the merits after adversarial proceedings, a default judgment is appropriate here. Accordingly, the Court RECOMMENDS that default judgment be entered against the Defendant.

**B. Damages under the Federal Communications Act**

The Federal Communications Act of 1934, 47 U.S.C. § 605 *et seq.*, prohibits commercial establishments from intercepting and broadcasting satellite cable programming without a license. It provides a private right of action in federal court. Both statutory and enhanced damages may be awarded for violations of 47 U.S.C. § 605(a), which prohibits the unauthorized interception and distribution of communications. 47 U.S.C. § 605(a). "[L]iability under section 605 requires proof that a defendant has (1) intercepted or aided the interception of, and (2) divulged or published or aided the divulging or publishing of, a communication transmitted by the plaintiff." *California Satellite Systems v. Seimon*, 767 F.2d 1364, 1366 (9th Cir. 1985). Plaintiff's complaint states a claim for a violation of § 605(a). *See J and J Sports Productions v. Coyne*, 857 F. Supp. 2d 909, 914 (N.D. Cal. 2012) (commercial establishment violated § 605 by broadcasting pay-per-view boxing match without authorization).

**Statutory Damages Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and Enhanced Statutory Damages Pursuant to the 47 § 605(e)(3)(C)(ii)**

Under 47 U.S.C. § 605(e)(3), the Court may award statutory damages between $1,000 and $10,000 for a violation of the Act. Plaintiff seeks the maximum limit of statutory damages of $10,000 under § 605(e)(3)(C)(i)(II). Plaintiff also seeks $100,000.00 in "enhanced statutory damages,[2]" the maximum amount of damages authorized by 47 U.S.C. § 605(e)(3)(C)(ii) which provides the following:

> In any case in which the court finds that *the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain*, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

---

[2] Although the term "enhanced" does not appear in the statute, courts have characterized the damages under § 605(e)(3)(C)(ii) as "enhanced" damages. *See*, e.g., *Joe Hand Promotions, Inc. v. Streshly*, 655 F.Supp.2d 1136 (S.D. Cal. 2009); *Kingvision Pay–Per–View, Ltd. v. Backman*, 102 F.Supp.2d 1196 (N.D. Cal. 2000). Accordingly, the Court will use the same term when referencing damages under this section.

(Emphasis added).

In support of its request for maximum statutory damages, Plaintiff has submitted an affidavit from its investigator. (Doc. 13-3). The investigator spent twelve minutes (10:08 p.m. to 10:12 p.m.) at the Redwood Inn, the Defendant's establishment, on September 14, 2013, when the Program was telecast nationwide. (Doc. 18-3). When the investigator approached the bar, he observed a large "*Mayweather v. Canelo*" fight poster prominently displayed to the right side of the main entrance.[3] *Id*. After paying the required cover charge, he entered the building. *Id*.

During his stay, the investigator noted there were 75 patrons in the establishment.[4] *Id*. He watched the fight on a 42 inch, flat screen television, in the southeast corner of the building. The fight was also being aired on a second, 72 inch screen television, in a separate room at the north end of the building. *Id*. The affidavit is silent as to whether any of the people present in the establishment were actually watching the Program. Moreover, although the affidavit describes the establishment as a "medium bar," it does not indicate that food and/or drinks were being served at the time the fight was being aired. *Id*.

In addition to the investigator's affidavit, Plaintiff's counsel has submitted an unsworn "declaration" alleging that "an additional action has been brought forth against Defendant Reyna Ramirez, individually and d/b/a Redwood Inn in the United States District Court, for the Eastern District." (Doc. 18-5). Attached to the declaration is a docket sheet for *J & J Sports Productions, Inc., v. Reyna Ramirez*, 14-cv-1575 JAM-MJ (E.D. Cal., October 8, 2014) ("*Ramirez II*"). After reviewing the docket and filings, the Court takes judicial notice that in *Ramirez II,* Plaintiff alleges that Defendant showed a fight on October 12, 2013, approximately one month *after* the fight was telecast in this case. Default judgment in *Ramirez II* was entered in the amount of

---

[3] The boxer Saul Alvarez is commonly known as Saul "Canelo" Alvarez.
[4] The maximum capacity of the bar was 90-100 people.

6

$7,600.00[5] on July 7, 2014 (Docs. 18 & 19), after the complaint in the instant case was filed.[6] Defendant urges this Court to impose enhanced damages because Plaintiff is a repeat offender.

The Court determines the statutory damages award according to what it "considers just." *Kingvision Pay–Per–View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198 (N.D.Cal.2000); 47 U.S.C. § 605(e)(3)(C)(i)(II). Court have taken different approaches and have awarded a wide array of damages in these types of cases. *See Joe Hand Promotions, Inc. v. Williams*, 2011 WL 6012483 (E.D. Cal. Dec. 1, 2011) (providing an expansive review of California statutory and enhanced statutory damage awards); *see also, e.g., J & J Sports Productions, Inc. v. Cardoze*, 2010 WL 2757106 (N.D. Cal. July 9, 2010) (No. C 09–05683 WHA) (setting statutory damages of $1000 and enhanced damages of $250 in bar and grill with capacity of 150 people, and seven television sets where 37 to 45 people were present while bout was broadcast); *J & J Sports Productions, Inc. v. Rodriguez,* 2010 WL 796942 (E.D. Cal. March 5, 2010) (No. CIV S08–1140 JAM DAD) (setting statutory damages of $1000 and enhancements of $4000 for taqueria with seating capacity of 30 and 16 to 20 patrons during showing of bout); *J & J Sports Productions, Inc. v. Gamino, No.* 1:11–cv–1056–AWI–BAM, 2012 WL 913743 at * 5 (E.D.Cal. March 16, 2012) (recommending statutory damages of $1,000 where restaurant sat 75 people and 12 persons were present during the Program's broadcast.

In *Kingvision Pay–Per–View, Ltd. v. Backman*, the court awarded the statutory minimum of $1,000, finding that "distributors should not be overcompensated and statutory awards should be proportional to the violation," but noting that "a higher statutory award may be justified in cases where defendants are repeat offenders who have pirated similar Programs on previous occasions, and who need an especially severe financial deterrent." *Kingsvision Pay-Per-View*,

---

[5] The judgment was comprised of $3,000.00 statutory damages for a violation of 47 U.S.C. § 605; $3,000.00 enhanced statutory damages for a violation of 47 U.S.C. § 605; and $1,600.00 damages for conversion.
[6] This instant case was filed on August 28, 2014. (Doc. 1).

7

102 F. Supp. 2d at 1198-99.  Similarly, in *Don King Productions/Kingvision v. Maldonado*, 1998 WL 879683 (N.D. Cal. December 11, 1998), the court noted that "in the absence of unusual or particularly egregious circumstances under which a defendant broadcast the fight … it would be inappropriate to award the statutory maximum." *Id.*, citing *Joe Hand Promotions v. Burg's Lounge*, 955 F.Supp. 42, 44 (E.D. Pa. 1997).

     Here, the Court notes that there was a $15.00 cover charge to attend the fight.  However, it is unclear from the declaration whether premium prices for food and drinks were charged during the telecast.   Moreover, there is no evidence that the patrons who were present were even watching the Program, or that the establishment experienced more than its usual level of patronage as a result of showing the Program.  The Court is unpersuaded by Plaintiff's argument that Defendant is a repeat offender because the incident in this case occurred one month prior to the incident in Ramirez II.  Absent evidence that Defendant was on notice that her conduct was in violation of laws against interception and that a prior damages award had failed to deter the Defendant, the Court finds it would be unjust to find Defendant is a repeat offender.  In light of all the applicable facts, imposing the maximum statutory of $10,000.00 in damages would be inappropriate under § 605(e)(3)(C)(i)(II).  *See, e.g.*, *J & J Sports Prods., Inc. v. Montano*, 2013 WL 1680633, at *3 (E.D. Cal. Apr.17, 2013) (No. 1:12–cv–00738–AWI–SAB); *J & J Sports Prods., Inc. v. Orellana*, 2013 WL 3341001, at *4 (E.D.Cal. July 2, 2013) (No. 1:12–cv–01850–AWI–SMS); *Joe Hand Promotions, Inc. v. Hauser*, 2014 WL 172532, at *1 (E.D. Cal. Jan. 15, 2014) (No. 1:13-cv-01072-LJO-SKO); *J & J Sports Prod. Inc. v. Reyes*, 2013 WL 4482742, at *1 (E.D. Cal. Aug. 20, 2013) (No. 1:12-CV-1847 LJO-BAM).

     Notwithstanding the above, "[a] traditional method of determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits made by the defendants." *Joe Hand Promotions v. Kim Thuy Ho*,  2009 WL 3047231, at *1, (N.D. Cal.Sept.18, 2009) (citations

omitted).  Weighing all of the relevant factors, the Court recommends a statutory damages award in the amount of $4,400.00 under 605(e)(3)(C)(i)(II) is appropriate.  Here the sub-licensing fee was $2,200.00 and the fight was shown on two televisions.  There is no evidence that Defendant received other financial benefit other than the cover charge that will be addressed below. (Doc. 18-1, pg. 13; Doc. 18-3 and pg. 2).  When considered together with the other damages recommended herein, this damages amount is a significant deterrent for Defendant or others inclined to illegally intercept protected programming.

Enhanced statutory damages pursuant to § 605(e)(3)(C)(ii) provides are analogous to punitive damages, as they are awarded at the Court's discretion in cases where a defendant's actions are willful and for the purpose of financial gain.  *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 580 (1996) (purpose of punitive damages is to punish and deter egregiously improper conduct); *J & J Sports Prods., Inc. v. Montano*, 2013 WL 1680633, at *4 (E.D. Cal. Apr. 17, 2013) (No. 1:12-cv-00738-AWI-SAB).  Factors considered by courts in assessing whether to award enhanced statutory damages include (1) repeat violations, (2) the extent of the unlawful monetary gains, (3) actual damages to the plaintiff, (4) the defendant's advertising for the broadcast of the event, (5) charging cover to enter the establishment to view the event, or (6) charging a premium for food or drinks during the event.  *See Kingsvision Pay–Per–View, Ltd. v. Backman*, 102 F.Supp.2d at 1198 (noting that "the principle of proportionality governs here: distributors should not be overcompensated and statutory awards should be proportional to the violation").

The Court has discretion to increase the award of damages for each violation in an amount up to $100,000 when a "violation was committed willfully and for purposes of direct or indirect commercial advantage or financial gain." *Backman*, 102 F. Supp. 2d at 1198.  Here, however, Plaintiff's request for $100,000 in enhanced damages is based on a 12-minute investigation, a

9

short affidavit from its investigator, and briefing that appears largely to be boilerplate.  In fact, the request for the maximum statutory damages award appears to be an afterthought, as the request is not included in the argument section of the motion, but instead is attached as a declaration to the moving papers.  *See J & J Sports Prods., Inc. v. Montano*, 2013 WL 1680633, at *4 (E.D. Cal. Apr. 17, 2013) (No. 1:12-cv-00738-AWI-SAB) ("Determining whether Defendant's actions were willful or egregious is hampered because Plaintiff filed a brief with minimal analysis of the facts specific to this case.").

The Court does find it significant, however, that the Defendant advertised the event and there was a $15.00 cover charge in this case.  At the time the investigator viewed the fight, there were 75 patrons watching the game.  Thus, there is evidence that the violation was committed for financial gain since it is reasonable to assume that the Defendant received at least $1,125.00 ($15.00 x 75) from the cover charge.  Given these facts, the Court recommends that Plaintiff be awarded $2,250.00, or double the amount of the profits received from money collected at the door.

**C. Damages for Conversion**

Finally, Plaintiff seeks $2,200.00 in conversion damages, the value of the property at the time of conversion (i.e., the fee to be paid to lawfully exhibit the Program).  Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."  *Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) (internal quotation marks omitted); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).  "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant."

10

*Gilman v. Dalby*, 176 Cal.App.4th 606, 615 n.1, 98 Cal.Rptr.3d 231 (2009). The exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion. *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995); *see also DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D. Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right to possession of personal property" for purposes of a conversion claim under California law).

Here, the evidence supports the request for conversion damages. Plaintiff was granted the exclusive domestic commercial exhibition licensing rights to the program at issue, and thus had the right to possession of the property at the time of the conversion. (Docs. 1, ¶ 14). Defendant did not legally purchase the program. (Doc. 1, ¶ 11). Finally, Plaintiff notes that Defendant would have been required to pay $2,200.00 for the right to lawfully exhibit the Program. (Doc. 18-1, pg. 13). Thus, Plaintiff is entitled to recover conversion damages in the amount of the sublicensing fee of $2,200.00.

**RECOMMENDATION**

For the reasons discussed above, the Court RECOMMENDS as follows:

1. Plaintiff's motion for default judgment be GRANTED IN PART;

2. Judgment be entered in this action against Defendant Reyna Ramirez d/b/a Redwood Inn; and

3. Damages in the total amount of $8,850.00 be awarded as follows:

   a. $4,400.00 in statutory damages pursuant to 47 U.S.C. § 605(3)(C)(i)(II);

   b. $ 2,250.00 in enhanced statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and

   c. $2,200.00 in damages for conversion.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B). Within fourteen (14) days of service of these

11

findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler,* 772 F. 3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **August 21, 2015**         **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE